## TOBIN v. INSURANCE AGENCY CO. (two cases).*

### Nos. 10364, 10388.

Circuit Court of Appeals, Eighth Circuit.

Dec. 3, 1935.

Harry S. Gleick, of St. Louis, Mo., for appellant.

*Rehearing denied Dec. 31, 1935.

242

Edward Greensfelder, of St. Louis, Mo. (Bernard Greensfelder, Joseph H. Grand, Forrest M. Hemker, and Greensfelder & Grand, all of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and FARIS, Circuit Judges.

GARDNER, Circuit Judge.

These two appeals are from an order of the District Court approving and confirming an order of a referee in bankruptcy upon petition for review. One of the appeals was allowed by the District Court and the other by this court, but they have been consolidated in this court.

An involuntary petition in bankruptcy was filed against Barney Grosberg, Inc., on July 27, 1933, and adjudication duly followed. On November 30, 1932, the bankrupt then being indebted to the appellee, Insurance Agency Company, in the sum of $12,078.70, and having prior thereto suffered loss by fire upon which he was making claim against fire insurance companies in the sum of $93,998.20, executed and delivered to it a written agreement of which the material parts are as follows:

"(3) Said Barney Grosberg, Inc., does hereby authorize and this instrument shall constitute an order on the part of said Barney Grosberg, Inc., to the above-mentioned insurance companies to pay to the said Insurance Agency Company out of any or all of the amounts payable to it by said insurance companies herein named, as and when said amounts are paid by said companies, the sum of twelve thousand seventy-eight and 70/100 ($12,078.70) dollars, with interest thereon at the rate of 6 per cent per annum from the 1st day of November, 1932, it being agreed that the first payments to be made by any or all of said insurance companies on account of the policies hereinabove mentioned shall be paid to the Insurance Agency Company until its claim herein specified shall have been paid. Any payment made hereunder by any insurance companies on account of the policies hereinabove mentioned shall be paid to the Insurance Agency Company until its claim herein specified shall have been paid. Any payment made hereunder by any insurance company shall, to the extent of said payment, be charged against the amount payable by said insurance company to Barney Grosberg, Inc. Nothing herein contained shall in any way deprive said Barney Grosberg, Inc., of its legal title to the amount due under the above-mentioned policies or of its right to sue therefor, and this shall not constitute an assignment of any interest of said Barney Grosberg, Inc., in or to any part of the proceeds of said insurance policies, but is merely intended as an order to pay as and when said sums are paid by said insurance companies."

"(5) The Insurance Agency Company agrees, upon receiving the above mentioned amount with interest thereon as herein provided, that it will surrender and release any and all claims that it may have against Barney Grosberg, Inc."

"(6) Said Insurance Agency Company does hereby agree that if and when it shall, by the means aforesaid, have been paid in full for its said claim, it will execute proper releases to said Barney Grosberg, Inc. and/or to said insurance companies."

Immediately after the execution and delivery of this agreement, appellee sent a letter to each of the eighteen insurance companies against which the bankrupt had claims and which were specifically named in the agreement, notifying them of the claim of appellee under the agreement. The referee found that all of the insurance companies consented to the agreement, and allowed the claim of appellee as a claim secured by the agreement, and the lower court sustained this order of the referee.

 It is earnestly urged by appellant, the trustee in bankruptcy, that no interest vested in appellee by reason of this agreement, for the reason that it was not sufficient to constitute an equitable assignment. The question of equitable assignments has so recently been considered by this court in State Central Savings Bank v. Hemmy, 77 F.(2d) 458, in an exhaustive opinion by Judge Stone, that any extended discussion of the subject would seem to be a work of supererogation. It is pointed out by Judge Stone that a mere agreement by a debtor to pay his debt out of a specified fund is not an equitable assignment of the fund, but there must be a distinct appropriation of the fund by the debtor and an agreement that the creditor shall be paid out of such fund. While no particular form is necessary, still it must appear that there was a mutual intention to appropriate on the one hand and to receive on the other. In proving such intention, resort may be had to the attending facts and circumstances.

 Referring now to the above-quoted agreement, it is observed that while it con-

tains language which, standing alone, would indicate that the parties to the instrument intended to appropriate funds due from the insurance companies for the payment of the debt due appellee, we cannot overlook the specific declaration that, "this shall not constitute an assignment of any interest of said Barney Grosberg, Inc., in or to any part of the proceeds of said insurance policies, but is merely intended as an order to pay as and when said sums are paid by said insurance companies." An equitable assignment must give the assignee a title, which, although not cognizable at law, will be protected in equity. This instrument refutes the contention that the parties intended that it would constitute an equitable assignment, and hence it cannot be given that effect. Parties may incorporate into their contracts any provisions that are not illegal or violative of public policy. This agreement is at least an order to pay out of a specific fund, and it has been accepted by each of the insurance companies. The language, when considered with the attending circumstances, indicates an intention to charge this fund with the payment of appellee's claim. It authorizes insurance companies holding the fund to pay the amount directly to the appellee, and we are of the view that an equitable lien was created thereby.

 A lien is distinguished from an assignment in that it is a charge upon property, while an assignment creates an interest in property. An equitable lien is unlike an equitable assignment because the lien, although not a title, is nevertheless a charge or security upon property. The distinction is pointed out in Re Interborough Consol. Corporation (C.C.A.2) 288 F. 334, 351, 32 A.L.R. 932, where it is said: "A distinction exists between an equitable lien and an equitable assignment. An equitable lien, while not a title, is available by way of charge. An equitable assignment gives the assignee a title which, although not cognizable at law, equity will recognize."

An equitable lien does not constitute an estate or property in the subject of it, but is simply an encumbrance or charge upon such property, the legal title remaining in the creator of the lien. As the words used in this agreement, considered with the attending facts and circumstances, are appropriate to the creation of an equitable lien, we think it should be so construed. It shows an intention to charge a particular property therein identified with an obligation. As said by the Supreme Court in Walker v. Brown, 165 U.S. 654, 17 S.Ct. 453, 457, 41 L.Ed. 865: "It is clear that if the express intention of the parties was to create an equitable lien upon the bonds or the value thereof, or if such intention arises by a necessary implication from the terms of the agreement, construed with reference to the situation of the parties at the time of the contract, and by the attendant circumstances, such equitable lien will be enforced by a court of equity against the bonds in the hands of Brown or against third persons who are volunteers or have notice." See, also, Geddes v. Reeves Coal & Dock Co. (C.C.A.8) 20 F.(2d) 48, 54 A.L.R. 282; Exchange State Bank v. Federal Surety Co. (C.C.A.8) 28 F.(2d) 485; Pierce v. National Bank of Commerce (C.C.A.8) 268 F. 487; Society of Shakers v. Watson (C.C.A.6) 68 F. 730; In re Interborough Consol. Corporation (C.C.A.2) 288 F. 334, 32 A.L.R. 932; Peck v. Jenness, 7 How. 612, 12 L.Ed. 841; Ketchum v. St. Louis, 101 U.S. 306, 25 L.Ed. 999; Barnes v. Alexander, 232 U.S. 117, 34 S.Ct. 276, 58 L.Ed. 530; Ingersoll v. Coram, 211 U.S. 335, 29 S.Ct. 92, 53 L.Ed. 208; Fourth Street Bank v. Yardley, 165 U.S. 634, 17 S. Ct. 439, 41 L.Ed. 855.

 An equitable lien is enforceable as against the debtor creating it, or third persons who have notice or are mere volunteers, and if created more than four months preceding bankruptcy it is valid as against the trustee, although the sums subject to the lien are collected within the four months period. Voltz v. Treadway & Marlatt (C.C.A.6) 59 F.(2d) 643; Harding v. Federal National Bank (C.C.A.1) 31 F.(2d) 914; Union Trust Co. v. Bulkeley (C.C.A. 6) 150 F. 510; Slack v. Gunerius (C.C.A. 7) 67 F.(2d) 852; United States Fidelity & Guaranty Co. v. Sweeney, Trustee (C.C.A. 8) 80 F.(2d) 235.

 But it is contended by appellant that the effect of the agreement is to make a partial assignment of one of the claims against the various insurance companies, and that partial assignments cannot be enforced in Missouri, citing Burnett v. Crandall, 63 Mo. 410. As this is a matter cognizable in equity, the Missouri rule is not binding on this court. Brill v. W. B. Foshay Co. (C.C.A.8) 65 F.(2d) 420. But even under the so-called Missouri rule, a partial assignment, when made with the consent of the debtor, has been held to be valid. Pickett v. School District, 193 Mo.

App. 519, 186 S.W. 533. The referee found that all of the insurance companies had consented to the agreement, and the trial court approved this finding. There is no contention that the finding is not sustained by substantial evidence, and hence the lien is valid under the Missouri rule as to partial assignments.

The order appealed from is therefore affirmed.